Thank you, Your Honors. May it please the Court, my name is Taylor Smith. I'm the attorney for Mr. Calvin Hoagland, the appellant in this matter. I also want to start by just saying thank you for letting me address this body as I have come in as counsel here after the briefing of this matter. I do not say that to distance myself at all from the arguments on behalf of Mr. Hoagland in this matter. They're only to give credit to Mr. Barrett Brewer who did the briefing in this matter. I'd be happy to answer any questions you guys have about anything that's happened since because that occurred in 2020. And so there's been, with regard to the underlying action, the Likens action that it's referred to, there's been some changes that have happened. So I'd be happy to answer any questions about that as I represent Mr. Hoagland in that matter at some point. But first, Your Honors, I want to point out that this is a matter concerning First Amendment retaliation. And we do not bring that lightly. But note that all appellees in this matter were, in 2015, town council members of the town of Philippine Head Island, South Carolina. And the allegations brought in this action stem from the inability in the, what I'm going to keep referring to as the Likens matter, inability to move to amend the complaint in that case to cite the unlawful and retaliatory use of public funds that funded Ms. Likens' ability to privately sue Mr. Hoagland for defamation. Now, remember, Ms. Likens is a town council member during the pendency of that case initially when it was brought to the route. And so I want that to be in the back of your minds as I go through this point. At all times, this was a case that was brought pursuant to what Mr. Hoagland was speaking about. Now, that was at town council meetings of the town of Hilton Head Island during their public comment period. Under South Carolina law, those – I'm sorry, can you just – I just have a chronology question. I do find this case somewhat confusing. The Likens suit was filed before the speech at the town council meetings. Isn't that right? The specifically complained about retaliatory acts, Your Honor, are the things that we say Likens is addressing when first they funded the suit, that is in approximately early December 2015, then at two instances where he was stopped from speaking at the town council meetings right after the suit was filed. So it's not the filing of the suit that was retaliatory. It's the funding of the suit that was retaliatory? It is all three, Your Honor. All three. I said two things. Is it the filing or the funding? It's the filing and the funding. But how can the filing have been in retaliation for things that he said at a public meeting after it was filed? Because this filing occurred to, as we allege in our complaint, to stop Mr. Hoagland from speaking about these matters and to silence others from coming forward to speak about the same corruption. This is how this chronology – The council retaliation claims are in response to something. And if the filing happens before his comments at the December 15th and January meeting, the suit can't be in response to that. That's just a matter of chronology, correct? Correct, Your Honor. So I guess I'm not stating this properly. Mr. Hoagland had been a vocal town council critic and spoken at this public forum that the town created all throughout 2015. And the statements that he made concerning Ms. Likens that brought the basis for, as she would allege, her purpose in bringing the defamation suit are from statements made in e-mails and, as we would allege, statements that he made before the town council prior to that date. So throughout 2015, he is speaking. I'm sorry, when you say you allege that, is that anywhere in the complaint? Or is that in your – Like, I'm looking at what your complaint says and it doesn't say that. So where would I find this in your complaint? In the complaint, Your Honor, I'll get back to it. This is an action where he is intimating that it is through these things that we say in our motion for summary judgment – Your motion – Okay, your motion – I'm sorry, can you – So, I don't want to bog you down in this, but it may be in your motion for summary judgment, but it's actually supposed to be in the complaint. And so, Your Honor, if you're referring to the original complaint – The amended complaint. Correct, that was – The operative complaint. Correct, Your Honor. That one provides that – All it says is punishing plaintiff's speech, but it doesn't say what speech. It does refer to the town meetings. It doesn't really matter. I'm sorry, I don't want to – No, but if you go to, Your Honor, at the bottom of what is on the appendix 19, paragraph 17, under the use of process, it specifically mentions that to punish plaintiff for the past exercise of social rights at town council meetings. At town council meetings. I'm sorry, we're just back to the same chronology question, that the suit was filed before the town council meetings that are alleged in the operative paragraph, which are the December and January meetings. But you want us to just look at the summary judgment briefing. Well, Your Honor, right. And since this is our appeal from the motion for summary judgment, which was granted on qualified immunity grounds to these appellants. And so, the complaint is alleging that during 2015 and prior, while speaking at town council meetings, it was because the town decided to use public funds to give to Ms. Likens for her to then sue. And after he brought it up at town council meetings, why did you sue me for speaking at these meetings? They, in response, said you cannot talk about that. I'm sorry to interrupt you, but I want to try to get a structural point figured out as best I can. It sounds like you claim that the retaliatory conduct is the restrictions at the two meetings, one in December, one in January, and the filing and funding of the lawsuit. Am I correct? Correct, Your Honor. Okay. Assume, for this question, that we think the restrictions at the meetings, December and January meetings, were reasonable time, place, and manner restrictions. Can restrictions that are reasonable time, place, and manner restrictions at the same time be improper First Amendment retaliatory conduct? It can when coupled with the use of these public funds given to an individual to sue an individual. So, I'm having trouble with... I understand, subject to the chronology issues, the lawsuit. But I'm trying to see how, as just a matter of law, a restriction that hypothetically qualifies as a reasonable time, place, and manner restriction could be retaliatory under that claim. It seems like if that were the case, it would effectively gut the concept of time, place, and manner restrictions. Your Honor, we would not concede that those were an application of reasonable time, place, and manner restrictions. I know. And so, at every time here, it is the content of Mr. Hogan's speech that is being judged. To follow up on my question, would we have to decide that the restrictions at the meeting were not reasonable time, place, and manner restrictions for them to be valid conduct for a First Amendment retaliation claim? No, you would not. What's the authority that says something that is reasonable  can also be improper retaliatory conduct? No, Your Honor, it's not that point I'm raising. I'm saying that, assuming that you are correct, let's assume for a second here that these were just reasonable time, place, and manner restrictions applied evenly to Mr. Hogan and was not a content restriction. I'm saying that in the basis for the qualified immunity grant, saying on a motion for summary judgment that they had that, you would have had to establish that he did not have a clearly established right against retaliation by using those two and the funding of the lawsuit and the filing to then have that potentially chilled speech. The court said there was no clearly established right here, principally because there was no right violated at the meeting. Excuse me, I'm sorry. I cut you off. Go ahead, please. I believe that that assumes, Your Honor, but you can't see this from the order, that that was presumably an application of reasonable time, place, and manner restrictions. Again, it's not a finding. There is no analysis done regarding that inquiry, but assuming that that is a reasonable time, place, and manner restriction that the court was saying, that does not approach, under a retaliation claim, what the inquiry is. Because when the court had to decide then, and they did in their order, which you can read, that there was a motive and a purpose for which Ms. Likens wasn't doing the suit, the court was having to assume an issue of fact regarding motive and intent. Can I just back you up onto qualified immunity for a moment? I couldn't find a case where a reasonable time, place, and manner restriction was held to be retaliatory. And I also can't find a case where a defamation action was held to be retaliatory. And I think these are sort of related issues, right? Town councils are allowed to impose certain restrictions, and if someone gets up and starts cursing, they're allowed to say, stop talking. And it's going to be because of the speech, and it's going to chill the speech, but it's still reasonable. Same with defamation suits. If someone's calling someone's employer, I actually shouldn't use that hypothetical, not about this case, but if someone is calling somebody's college and saying that, you know, making up just like really scurrilous lies about them, because of the way they voted in some council meeting, people are allowed to use legal process to protect themselves against that. It will be because of the speech, and it will chill the speech, but it doesn't matter because it's still reasonable. So these are really tricky cases, and I couldn't find any authority on point saying this can count as retaliation, at least without some finding that the restriction was actually unreasonable or motivated by impermissible retaliatory animus, and same for the defamation suit. So why isn't this a qualified immunity case? I can't find any law saying this can go forward. Well, Your Honor, we do not believe that those restrictions at those meetings were content-neutral restrictions on his speech as they were addressing. And look, this is on DeNova, Your Honor. You can certainly look at this record and make that judgment for yourself. It is our argument that if you do do that, and you do look at the videos which are a part of this, you will see that they were getting him to stop talking at the forum they created about the thing which they are suing them for, right? That's not them. That's Ms. Likens. And so their use of the public funds to her to stop harassment in what they were trying to stop is what they were saying the purpose for which they needed to get Mr. Hoagland, according to their deposition testimony, to stop talking. And so that is why this was brought as a retaliation case, because throughout 2015 where he's speaking at these meetings, and then after they fund the suit, we can say two instances, in addition to the funding of the suit, that showed that they had an animus towards him speaking about what they were doing. Furthermore, in the underlying suit, Your Honor, which has concluded since then, there's been no finding of defamation there. And so that has been on appeal and has permitted or was issued recently, I can give you guys the phone number if you'd like to see it, on their permanent injunction against harassment, which was denied by the trial court, and was recently upheld by the South Carolina Court of Appeals. This has been a campaign. But there was no finding that it wasn't defamatory either. And I guess what I'm getting at is it seems to me, when you're talking about a defamation suit, the question isn't who wins, it's is that suit so frivolous that we have to assume it was filed not in a good faith effort to protect oneself through the legal machinery to which people are entitled to resort when they are under attack, but instead it's so frivolous, this is so obviously non-defamatory, that it can only have been filed out of some retaliatory animus. And the complaint doesn't allege it was frivolous, it doesn't seem frivolous calling someone's employer and saying they can't be left safely with children. There's at least a plausible case that that is defamatory. So I am very concerned because I think that the import of what you're saying would strip local governing boards of the ability to protect themselves at a time when passions are running very high and these people are subject to all kinds of attacks. It would strip them of the ability to protect themselves through defamation suits and also the reasons Judge Quattlebaum was getting at to sort of run their proceedings under reasonable time, place, and manner restrictions. I see I'm out of time. May I briefly respond? Your Honor, in this case, on this record, on the granting of a motion of summary judgment on qualified immunity, judged in a light most favorable to the non-moving party, here in this case, the finding of the motive regarding why the suit was initiated was something that the court did in this case, which we said was clear error. Because from that pleading, and we're not saying that the filing of a defamation case in and of itself is an effort at retaliation. We're saying when public funds are used and given to an individual and that individual is also who you're complaining to in the forum. If you can stop speaking in the forum, that is where the problem is. Mr. Byke? Thank you, ma'am. Please go ahead. My name is Hugh Byke, and I'm here on behalf of Mayor Bennett, Ms. Liking, and the other council members who have been sued, both individually and in their official capacity. And we assert that Judge Gergel's underlying order was appropriate, succinct, and in accordance with the facts before the court at the time of the ruling. We think that the order itself, as you all just recognized, is one that addresses disorderly conduct, as being one of the substantive evils the government has a right to prevent, as set forth in the Steinberg case, which addressed, along with the Bogan case from the U.S. Supreme Court, the underlying problems for local legislators. You have contentious issues before a tribunal, and many times you have folks like Ms. Liking, who are part-time council members, who have a full-time job, outside the bounds of government. Then you have someone like Mr. Hogan, who's trying to influence her through offering money to the Boys and Girls Club, calling her executive director, and saying, you know, I will support you if she votes in my favor. And then, when the vote goes against him, calls the executive director and calls her a liar, says she's unfit to be around children, when she works for the Boys and Girls Club, and is currently the executive director of the Boys and Girls Club. And it's this intolerable position that Mr. Hogan continued, presented to the town of Hilton Head. And we contend that the qualified immunity was properly granted, because time, place, and manner. The Rowe case, cited in our brief, outlines that residency is a proper consideration. And as we went to the January 6, 2016 council meeting, where there was a seven-minute delay, Judge Gergel found that was reasonable, because they considered whether to allow him to continue to speak, because he was a non-resident. So, Mr. Boggs, if I could interrupt you for a second. Assume, you know, for the sake of discussion, we agree that the restrictions at the meeting were appropriate and reasonable. You know, I want to switch over to the lawsuit, and the funding issues with the lawsuit. Under First Amendment retaliation, I think the elements are, you know, protected speech, an adverse effect on First Amendment rights, and a causal relationship. It's hard for me to say or tell exactly the basis of the district court's decision as it relates to the lawsuit. I can't tell if the decision is based on the evidence that the suit was filed in good faith, or if it was, which I'm not sure how that matters in a First Amendment retaliation, or if the district court is saying it's not protected speech. And so, first of all, do you have a view on that question? I do have a view on it. First of all, I think you're correct. It's not protected speech. It's not protected speech when it's a true threat. But did the district court make that finding as to what was protected speech and what was not protected speech? That's a little bit of my hang-up here. You know, I'm sympathetic to certain aspects of the argument you're making, but I wonder whether the district court did the proper analysis. I think the district court did a thorough analysis, and it talks about… Well, it didn't say what was protected and what wasn't protected, did it? There were two ways this was protected. One was the threats, and he describes the war that Mr. Pogren said he was in with counsel in taking out the half-page ad in the local paper after these events. And also, he said it's protected under legislative immunity. The actions were protected because the procurement code of the town of Hilton Head allowed for the funding of a lawsuit to keep an individual council member from being attacked in this way. So your position is that it was unprotected, and so we don't get to the adverse effect and the causal relationship. It's unprotected because it's a true threat? I think that's one basis. I think also you could look at the other two factors, whether he was adversely affected, and whether there's a causal relationship between his speech and the retaliation. We contend that there is no causal relationship. That was Ms. Liking's individual right to go through the proper legal process of a defamation claim that she believed existed. The town procurement code and in the vote of the council, they used their legislative authority to say, yes, we think this is improper. We think that we should protect the processes of the town government from irrational and inflammatory rhetoric and allow funding. Now that eventually, as was in this record, was noted to have been changed to a contingency agreement, and I contend that the Likings lawsuit, the other lawsuit is not part of this record, but if we're going to go there, all of it has been paid back today through that other lawsuit. There have been no expenditures from the city or from the town related to these events that have not been repaid. So we contend that he was not adversely affected by this. But isn't the test, this is kind of not your intuitive cause of action, and our law may not necessarily be intuitive. The test for adverse effect, I think, is not whether he was adversely affected, but whether a reasonable person or a person of ordinary firmness would be. It seems like Mr. Hoagland's probably pretty firm and probably wasn't affected at all. But there is perhaps an argument that a lawsuit in response to legitimate First Amendment activity, I know you're not saying this is legitimate, I understand that, but if you assume it was legitimate, a lawsuit in response to that might cause a person of ordinary firmness to not engage in speech. Judge Harris made a very good point, and that is that the lawsuit had been filed prior to any of these events. And it was just in support of her, in support of responding to threats. And also, I think... Counsel, I'm sorry, before you move off this point, I want to actually make sure I understand your argument here. It seems to me, just generally speaking, like of course a defamation suit is going to chill someone's speech, that's the whole point of filing it. You file it because of the speech, and you file it to make them stop talking or to pay for having talked. I don't see a way around that. Unless what you're saying is that the decision to fund the speech would not have a chilling effect, sort of over and above the filing of the suit itself? Lawsuits are funded in a number of different ways. I don't think that the town funding this lawsuit had any impact upon Mr. Hogan. It's the filing of the suit itself that would have the chilling effect and not where the money is coming from. It doesn't matter if she borrowed the money from her bank, if she got it from the... It's the filing of the suit. Okay. And then you would, I think, say the filing of the suit was not sort of a governmental action subject to 1983 at all, that's just sort of a personal person filing a lawsuit? That's correct. This suit's been filed against these council members, both individually and in their official capacity. And I think that that's a good point, that she had the right to file the suit, and it was before these alleged actions, which she's saying retaliated against him, were his speeches on December 15th and January 6th. Was any of his speech protected under your point of view? I can't recall everything that he said, but I think that the personal attacks, the tone, the time, the raising the issues were not protected. Well, the district court didn't really sort out the different elements of his speech, did they? No, I think... As to protected versus unprotected. How does that legally affect the analysis and outcome of this case, or does it? I don't think it does. I think the totality of the evidence is clear. I also, attached to our motions under Judges, which is part of the record, is the testimony of both Miss Likens and Mayor Bennett as to the purpose of the funding of the lawsuit. It wasn't just Mr. Hoagland's actions. It was to protect the entirety of their legislative process. So it fit within the sphere of their legislative activity. So, one of the things that's hard to figure out to me, and Judge Harris asked about the complaint here, is that the complaint doesn't even say retaliatory. Yeah, there's not a retaliatory, first-minute retaliation, cause of action. It doesn't use the word retaliation or retaliatory anywhere in it. Paragraph 43 talks about the restrictions, and the last clause is the closest thing that I saw. But it doesn't seem like that's the argument. It seems like the parties moved past that and accepted it as a part of the complaint. And also hard to figure out is what, I think Judge King was just talking about, what's the protected speech? If we're talking, the only things mentioned in the complaint are the December and January meetings, but the order in the summary judgment pleading seems to refer to the activities before those meetings. And so if you're talking about the stuff leading up to the December 15th meeting, maybe some of that was protected. Maybe some of it wasn't. That's what I'm trying to sort out with the lawsuit. Was there anything that, you know, before the, can we consider anything before the December 15th meeting or before the filing of the lawsuit? And if so, was any of that protected? I think you can consider the record in its entirety, but I do not believe that I can point you to anything specifically that was protected given the tone, manner, time, and the basis for granting qualified immunity under Judge Gergel's order. That's a pretty significant ruling for us. I mean, no doubt things here were aggressive and may at times have crossed the line, but I mean, I'm sympathetic certainly to given some of the facts here, but I think as I read it, some of it was, you know, lobbying, lobbying, mislikings, you know, to support and all. But the retaliatory conduct, according to the appellant, is the filing of a defamation. So is your view that a defamation action by definition can't be retaliatory? It's a lawful legal process. It's a lawful process that anyone has the right to do. We don't have to get into the basis of whether or not it was defamatory or not. That's for the legal process to determine. But what if part of the speech was protected? What? Yeah, what if part of the speech was protected? I would leave that to the appellant to advise us. Counsel, can I, I mean, there is case law out there, I hate to sort of bring to your attention cases that are not in the briefs, but there is case law out there dealing with exactly this question, saying that a defamation action, by definition, you can only recover for non-protective speech. So if it is not a facially frivolous defamation action, it can't be retaliation, because by definition, you are seeking to recover for non-protective speech. If it's frivolous, if it is so frivolous that you can infer from the frivolity that this was not a good faith effort to employ the legal process, but instead it must have been an effort to punish, because it obviously isn't going anywhere, that's one thing. But this one doesn't look frivolous on its face. There's no allegation that it's frivolous. The district court found that it was a good faith effort to use the legal process. I don't want to tell you how to argue your case, but smart courts have wrestled with this question, and this is what they've come up with. I agree with you, and I agree with your example earlier about the college professor being attacked on two different fronts. For that, I think it is correct. This was a proper legal process. The court found appropriately that this was a proper legal process that was protected by legislative immunity. It was not retaliatory. It was not an abuse of the process under South Carolina law. There's no establishment of an ulterior purpose or a willful lack. There's no coercion to obtain a collateral advantage. For instance, they've even said extortion. There was no extortion here. This was an appropriate process within the laws of the state of South Carolina. It was not an abusive process. It has not been found to have been an abusive process, even through the affirmative defenses asserted by the appellate within that process. So I contend that throughout, what was happening here was a legitimate public interest to maintain the dignity and the civility and the decorum of the local processes. And at some point, we have to protect that. And that's what the Steinberg case addresses, the Bogan case addressed, that we have to, in order to get our brightest minds and our best people to be willing to step into these positions, they have to have certain protections. And I think that both qualified immunity, as outlined by Judge Gerbel, as well as legislative immunity, apply. And I think that his order in totality is correct. He was trying to be succinct. He was trying to outline it the best he could. And I think that under the full record... If there's nothing further, thank you. Thank you. Your Honors, you're not going to be able to find that these, on this record, in those videos that are within this record, that at any time these were content-neutral restrictions on Mr. Hogan's speech. And I say that because in the light this had to be viewed in this motion for somebody to report this court, there's at least an issue of fact that concerns whether or not what he was saying at that time would have been the kind of thing which they elsewhere could have sought under the state laws of South Carolina to be harassment or under their town code to be decorum. This is not a case about whether or not their exercise of a lawsuit in and of itself is something which this court has to recognize is always going to be retaliatory. This is before the court on whether or not there was a clearly established right that existed when this court said that these appellees have qualified immunity in this suit. If you're saying it's not... There's no clearly established... There's no law that clearly... There is law that clearly establishes your client's right. What are the cases you're talking about? Well, so this court has acknowledged in Suarez on the First Amendment retaliation claim that when it is that protected speech, so this is the first part that is the infirmity with the court's order, right? There are no findings regarding whether or not this speech is protected or not. This analysis is omitted entirely. In answer to my question, I want to make sure we're on the same page. There's a way the Supreme Court tells us we do clearly established rights, and it's at a factual level. It's not general principles against retaliatory conduct. It's not general principles about free speech. It's factually analogous situations, and so I'm trying to find out if you have law from the Supreme Court, the Fourth Circuit, or the consensus from persuasive jurisdictions of factually similar situations that clearly establish the right you're talking about. And on these facts, Your Honor, regarding the suppression of speech at these meetings and the funding and filing of a lawsuit, there is none. But that is not what this court was having to decide at that time. What the court was having to decide is that they on qualified immunity would need to be able to establish that what they were doing was part of their job under qualified immunity, a job-related function, as this court has said in Holloman. And so why are they doing that pursuant to that power that they have? This wasn't even, I think, under this court's jurisprudence, what one would consider under qualified immunity to be a legislative act because it was giving public funds to an individual of counsel to use for purposes of a lawsuit against someone who's spoken before counsel. So qualified immunity doesn't even come into play because the law does not afford qualified immunity for individuals when they are not acting within their job-related function. And this is what we are challenging is something that was part of the retaliation because the use of public funds by a town council given to an individual town council member to initiate litigation against a person who frequently speaks before counsel is something that could chill speech and did in this case, if allowed to go to trial, would be proven. This court's infirmity is not going into establishing anywhere in this record that this was unprotected speech. Well, counsel, in fairness, I'm just coming back to the complaint issue, I guess. I mean, the main argument in your brief is the district court didn't march through the elements of retaliation. But what the district court did, and I don't know why this case started with a complaint, and it seemed to be about something else at summary judgment, but then when it's time to write the order, the district court goes back to the complaint and says, look, you've alleged two things, that you restrained my speech at the meeting and that you initiated a private lawsuit against the plaintiff for the purpose of chilling speech. Those are the two things I'm going to address. I mean, it's true the district court didn't go through protected and didn't talk about the chilling effect, but that's because you didn't allege either that your client engaged in protected speech or that his speech was chilled. So it's hard for me to say, to write an opinion saying the district court erred by only addressing the things that you alleged in your complaint. Your Honor, I understand, and that being back in 2015 when I wasn't a part of the case, I would have done that differently. But tell me how that opinion writes. The district court was wrong because it didn't address a bunch of stuff that wasn't alleged in this case. In that complaint, you can find that there were violations that were content-specific regarding his speech. I cannot find them. I have looked and I cannot find them. You can, Your Honor, if you go back to the dates mentioned on the... No, not about the dates. Where in this complaint, and it starts at JA-48 and the operative count is at page 53, where does it say, my speech was chilled or I engaged in protected speech? Your Honor, it says on paragraph 12 on the JA-53. That's a different complaint. First of all, that's a whole different complaint. He talks about interrupting in paragraph 43. He says his speech was interrupted. How is that? His speech was interrupted would be to the speech he was providing at the forum they created. What he's saying is that in that moment when allowed to speak, he was being interrupted from the dais about something that he could not speak about by subject matter. His speech was chilled because he was interrupted? Correct. Although he was allowed to speak later? Yes. He was not allowed to finish the thought concerning this is what I want to address counsel. By the way, in this record, this court can view how the deponents here, the appellees in their testimony, said that they could see he was always addressing the same issue with town council about a matter of which they had supervision and control, i.e., a matter of public concern. It might have been inartful, but at no point can this court find from this record in light viewed most favorably to Mr. Hoagland at this stage that it was necessarily unprotected speech. I understand the inartfulness with which this complaint is drafted, Your Honor, and I appreciate that. I, at this point, though, on this record, believe that it is appropriate to reverse this court because of findings the court could not have made from the record, but primarily because they could not have assumed that these processes were done in a certain manner, which is against the retaliatory First Amendment case law that suggests that even if it's a legal process, it can otherwise also chill speech. Thank you, Your Honor. Thank you. We're going to come down and agree counsel, and then we'll hear our third case.
judges: Pamela A. Harris, A. Marvin Quattlebaum Jr., Barbara Milano Keenan